## CITIES SERVICE OIL CO v TURNER

Ohio Appeals, 7th Dist, Mahoning Co

Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

Elmer T. Phillips, Youngstown, and Herbert L. Kerr, for defendant in error.

## OPINION

By ROBERTS, J.

At the time of the transaction complained of, Webster Harpman was an employe

of the defendant in sole charge of said gas station. He was eighteen years of age and had been engaged in said employment for about one month previous to the accident. Webster Harpman in his testimony denies that he was in the station when the plaintiff was injured; denies that he was playing with or using the air hose; denies that he directed it toward or upon the plaintiff or caused him any injury in connection therewith, and testifies to the effect that while he had been called out to furnish gas to a customer he saw the boys playing with the hose, blowing their caps to the ceiling with the air compressor, and otherwise amusing themselves. The boys testify that this conduct was engaged in by Harpman.

Plaintiff testifies as follows, in part:

"Q. Now, will you tell the jury, just take your time, tell the court and jury, as near as you can, how you came to get hurt?

A. Well, we were, Johnnie and I, was standing there, and Harpman had the gun when he was blowing the papers around the floor, and I was standing, and Jack got a drink of water and at that time he was standing in front of me, and well then Harpman was cleaning in back of me, and I guess I might have been in his way, and he shot it up."

Jack Rice testifies, on page 42:
"Q. Did you see him (Harpman) turn it on Kenneth Turner's body at any time?
A. Yes sir."

Rice also says, page 53:
"Q. So you didn't see anything that would indicate he was hurt anywhere other than he may just have a stomach ache?
A. Yes, sir.
Q. You didn't see anything done to him that would hurt him?
A. No sir.
Q. You didn't see this air gun held against his body at all, did you?
A. Well, he was standing between Harpman and me.
Q. He was between you?
A. Yes sir.
Q. But you didn't see what Harpman did with the gun, while you were standing there, did you?
A. I couldn't tell."

Concerning the injury which the boy received, Dr. Allison, a Proctologist, consulted by Dr. Ranz, made an examination on January 16th, 1930, about three weeks after the accident. He says:

"A. I found an irritation and cracking of the mucous membrane of the inner canal at the junction where the second mucous membrane and the rectum meet.
Q. Did that extend over the entire length of the canal?
A. No sir. The inner canal is anywhere from three-fourths of an inch to one and one-half inch in length.
Q. From your examination I take it that there was no involvement or no rupture of the wall of the intestine?
A. I didn't find any."

The above indicates the nature of the injury. The plaintiff was confined to the hospital for some time and suffered from the effects thereof for a considerable time thereafter. He was quite seriously injured. Presumably the allegation that the nozzle or gun, as it is called, of this air hose, which is said to have been eight inches in length, was not inserted inside of the rectum, for the reason that it is apparent that if the full force, or considerable part of the force, of this compressed air had been so forced into the body of the plaintiff, the bowels would have been ruptured and presumably death would have resulted.

It is evident that the clothing of the boy intervened between the end of the air gun and his body, and presumably it was held at least some little distance away from the body, or much greater injury would have resulted. The evidence is somewhat conflicting in this case, consisting, as it does, of Harpman, the attendant, and these two boys, as to the immediate transaction; the attendant, as before stated, denying that he used the hose at all, either upon the plaintiff or for the purpose of cleaning the floor or furniture, to which allusion will hereinafter be made.

The testimony of the plaintiff is quite direct and positive as to how he received the injury, to the effect that he was standing at or near the desk, that Harpman, the attendant, was using the air hose for the purpose of cleaning the desk, furniture and floor, and that whie so doing, he, the plaintiff, received the discharge of air into his person, as hereinbefore stated. While the boy Rice could not see precisely what happened, he likewise testifies that Harpman was using the compressed air to clean the floor and furniture, and their situation was as testified to by the plaintiff, that he was standing in front of the plaintiff getting a drink of water. That the boy received this injury is not denied. The evidence of the boys was evidently persuasive to the

jury, because the verdict was in favor of the plaintiff.

The testimony of these boys appears quite convincing to this court. They appear to have testified candidly and frankly. They did not remember everything that had happened. They did not always agree, which probably would not have resulted had they been attempting to testify in collusion contrary to the actual facts. If Harpman, the attendant, was using the air hose without permission and without right, of his own wrong, the defendant in this case would not be liable. This hose, some 75 feet in length, had been furnished in connection with the air compressor, which acted automatically, and, as said in the evidence, maintained a pressure of from 125 to 175 pounds, for the purpose of forcing lubricants into the joints, bearings and otherwise of automobiles. There was also another pipe for the purpose of carrying compressed air to the outside of the building where customers could use it for pumping tires. This, however, was not involved in the transaction in dispute.

The evidence is to the effect that brooms, mops, cloths and so forth had been provided for the purpose of keeping the interior of the station clean. If the use of the hose had ceased, it had not been taken away or disconnected from the compressor but was kept coiled thereon.

A witness by the name of Leo K. Lynch, a former employe of the defendant, testifies, Record page 124:

"Q. It (referring to the air hose) would not clean the floor?

A. No.

Q. It could not clean the floor?

A. No.

Q. Could you conceive, from your knowledge of the air gun and pressure in it, and the way it was constructed, can you conceive of any way that a man could take the air gun and dust the top of the desk successfully?

A. No.

Q. Could it possibly be done without scattering the papers and records the attendant was required to keep?

A. No."

Counsel for the defendant cite this testimony as being convincing evidence that the hose could not be used for cleaning purposes. It would seem to be observable, however, that the answers and deductions of this witness, Lynch, are presumably and probably misleading. The air pressure was released from the hose by operating a trigger with the finger. Whether by the use of this trigger the force of air could be regulated and controlled, or whether it released the whole pressure or not, the evidence does not indicate. It is a matter of common knowledge, it is thought, that some of these air lines operate by the use of a globe valve by which the extent of the pressure can be controlled. The defendant had left this hose in the room, attached to the compressor, placed it all in charge of the attendant, Harpman, presumably in effect giving him charge of and the right to use in a reasonable manner such instruments as were within his control. It would seem not to be an unreasonable result with this hose, to use it for the purpose of blowing dust off from the furniture and off from the floor, that it would be an effective way of so doing. The force of the air, in any event, would be controlled by the distance at which it was released from the object sought to be dusted. It would seem to have been more convenient than a broom or mop with which to work in and around and under furniture and blow the air out, where other implements would be more inconvenient and more ineffective. The air compressor could be so guided to the outside door and blown outside or to a corner of the room, dust thus collected and subject to removal by dust pan and broom.

It is urged that the desk could not be dusted by the air compressor because it would blow not only records kept for future use, but also waste paper, and that the dust could not be blown off from the surface of the desk without blowing off the papers intended to be preserved. It would seem to be a result that if there were a pile of papers upon the desk which were intended to be retained and the rest of the surface of the desk cleaned by pressure, that the end of the gun could be placed beyond the papers and the pressure being outward and forward, would not disturb the papers in the rear of the gun, or it would have been an easy matter to have raised these papers that it was desired to preserve and then blow the dust off from the surface. Such use of the air hose would seem to be consistent and reasonable and within the apparent authority of the attendant to use. It was his duty to keep the premises clean. He was acting within the scope of his authority in so attempting to clean the room and its contents. He used an instrumentality left with him suitable for the purpose, and if he was engaged at the time of the accident in so cleaning the room by air pressure, and the furniture therein contained, it is our opinion that he was acting

within the scope of his authority, and that the master would be responsible for his conduct. Yet, however, the attendant, Harpman, either from a desire, wantonly or otherwise, to do this boy an injury, had personally deviated from his proper conduct to injure this boy, or had purposely placed the hose against the person of plaintiff for the purpose of playing a practical joke upon him and unintentionally had injured him, in either of these instances the master would not be liable, but we believe from a consideration of all of the evidence and such deductions as may properly be made therefrom, that at the time of the accident Harpman was engaged in dusting the furniture, as before suggested; that in so doing and in switching or moving the hose about, which was very flexible, he swung the hose across or near to the body of the plaintiff, whereby plaintiff sustained the injury complained of, that this was a negligent performance of duty by the attendant, acting within the scope of his employment.

In this connection one authority will be cited, that of Galveston, H. & S. A. Ry. v Currie, Supreme Court of Texas, reported in 96 SW, commencing on page 1073. The subject matter of this case was a similar accident to the one under consideration. Trainmen were using an air hose with which to extinguish the fire under the boilers of a locomotive. One man was standing holding the air hose in readiness to act if the heat of the metal should again ignite the leaking oil. While so doing, as a prank and joke, he turned the hose upon a fellow employe who was standing nearby. The force of this air was thrown across the buttocks of the other employe, as stated in the opinion, with the result that the air pressure penetrated his person through the rectum, rupturing the bowel and causing death. The court, in commenting upon this situation, says:

"Let it be conceded that in holding the hose in readiness to put out any fire that might again flare up, Nichols was performing a duty as servant, and he, while thus holding or in attempting to use it for the purpose for which it was held, negligently turned it against one of the other employes, his negligence would have been imputable to his employer as incidental to the effort to do that which was in the line of the servant's duty."

Reaching the conclusion, as before suggested, that it seems most probable that the attendant Harpman acted carelessly while acting for the master, the verdict of the jury was not against the weight of the evidence. The weight of the evidence being the basis for all of the propositions of alleged error in the case, it follows that the judgment of the Court of Common Pleas should be and is affirmed.

Judgment affirmed.

LYNCH and SMITH, JJ, concur in the judgment.